White v Cuomo (2020 NY Slip Op 00895)





White v Cuomo


2020 NY Slip Op 00895


Decided on February 6, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 6, 2020

528026

[*1]Jennifer White et al., Respondents-Appellants,
v
Andrew Cuomo, as Governor of the State of New York, et al., Appellants-Respondents.

Calendar Date: November 14, 2019

Before: Garry, P.J., Clark, Mulvey, Pritzker and Reynolds Fitzgerald, JJ.


Letitia James, Attorney General, Albany (Victor Paladino of counsel), for appellants-respondents.
O'Connell and Aronowitz, Albany (Cornelius D. Murray of counsel), for respondents-appellants.
Debevoise & Plimpton LLP, New York City (W. David Sarratt of counsel) and Boies, Schiller & Flexner LLP, New York City (Joshua Schiller of counsel), for Fanduel, Inc. and another, amici curiae.
Perkins Coie LLP, New York City (Adam H. Schuman of counsel), for Capital Region Gaming, LLC, amicus curiae.



Mulvey, J.
Cross appeals from an order of the Supreme Court (Connolly, J.), entered October 31, 2018 in Albany County, which (1) partially granted plaintiffs' motion for summary judgment, and (2) partially granted defendants' cross motion for summary judgment dismissing the complaint.
In August 2016, the Legislature amended the Racing, Pari-Mutuel Wagering and Breeding Law by adding an article related to the registration and regulation of interactive fantasy sports (hereinafter IFS) contests (see Racing, Pari-Mutuel Wagering and Breeding Law art 14, as added by L 2016, ch 237). Racing, Pari-Mutuel Wagering and Breeding Law article 14 declares that IFS contests do not constitute gambling and provides for consumer safeguards, minimum standards and the registration, regulation and taxation of IFS providers. Plaintiffs — several state taxpayers who are or have been affected by the negative impacts of gambling — commenced this action seeking a declaratory judgment that article 14 violates NY Constitution, article I, § 9 and seeking to enjoin defendants from implementing the statutes. After joinder of issue, plaintiffs moved for summary judgment on their complaint. Defendants cross-moved for summary judgment dismissing the complaint and for a declaration that article 14 does not violate the NY Constitution. Supreme Court partially granted plaintiffs' motion for summary judgment, holding that article 14, to the extent that it authorizes and regulates IFS, was void as in violation of NY Constitution, article I, § 9. The court also partially granted defendants' cross motion for summary judgment dismissing the complaint, holding that article 14, to the extent that it excludes IFS from the scope of the definition of "gambling" in Penal Law article 225, was not in violation of NY Constitution, article I, § 9. Defendants appeal and plaintiffs cross-appeal.
Supreme Court properly granted summary judgment to plaintiffs inasmuch as it found that Racing, Pari-Mutuel Wagering and Breeding Law article 14, to the extent that it authorizes IFS contests, permits gambling in violation of NY Constitution, article I, § 9. "Legislative enactments enjoy a strong presumption of constitutionality and parties challenging a duly enacted statute face the initial burden of demonstrating the statute's invalidity beyond a reasonable doubt" (Overstock.com, Inc. v New York State Dept. of Taxation & Fin., 20 NY3d 586, 593 [2013] [internal quotation marks, ellipsis, brackets and citations omitted], cert denied 571 US 1071 [2013]; see Schulz v State of N.Y. Exec., 138 AD3d 1197, 1201 [2016], appeal dismissed 27 NY3d 1123 [2016]; Matter of Concerned Home Care Providers, Inc. v State of New York, 108 AD3d 151, 154 [2013], lv dismissed 22 NY3d 946 [2013]). A
"basic tenet of constitutional and statutory interpretation [is] that the clearest and most compelling indicator of the drafters' intent is the language itself. Resort must be had to the natural signification of the words employed, and if they have a definite meaning, which involves no absurdity or contradiction, there is no room for construction, and courts have no right to add to or take away from that meaning" (Hernandez v State of New York, 173 AD3d 105, 111 [2019] [internal quotation marks, brackets and citations omitted]; see Matter of King v Cuomo, 81 NY2d 247, 253 [1993]).
The dissent asserts that "our judicial inquiry is limited to deciding whether the Legislature rationally determined, after hearing and considering evidence, that IFS contests are not 'gambling' as defined under Penal Law § 225.00" (dissenting op at 12). The dissent implies that, in exercising our judicial function in this action, we are limited to reviewing the legislative record and determining whether the Legislature's determination was rational. The parties' submission of a statement of agreed-upon facts indicates that even they did not believe that the courts are so limited in what we can consider.
Further, the cases relied upon by the dissent mainly use this rationality standard to determine whether legislative actions violate the Equal Protection Clause or the Due Process Clause of the NY and US Constitutions (see e.g. United States v Carolene Products Co., 304 US 144, 154 [1938] [analyzing an equal protection challenge by determining whether a rational basis exists for the legislation whose constitutionality is attacked]; Old Dearborn Distributing Co. v Seagram-Distillers Corp., 299 US 183, 196 [1936]; Lincoln Bldg. Assoc. v Barr, 1 NY2d 413, 415 [1956], appeal dismissed 355 US 12 [1957]). In a more recent case, while addressing arguments other than equal protection challenges, the Court of Appeals — without mentioning the source of factual information relied upon, or that such information came from the legislative record or was before the Legislature (see Dalton v Pataki, 5 NY3d 243, 263-265 [2005], certs denied 546 US 1032 [2005]) — did not use the standard invoked by the dissent here, but instead simply interpreted the language of NY Constitution, article I, § 9 against legislative enactments to determine for itself whether the statutes violated that constitutional anti-gambling provision (id. at 263-265, 270-272; compare id. at 265-266 [addressing equal protection challenge under the standard utilized by the dissent herein]). We discern our judicial function here as more than simply reviewing the legislative record to see if any known or assumed facts could support the Legislature's choice, even if other evidence would also support the opposite choice (compare Matter of Marine Holdings, LLC v New York City Commn. on Human Rights, 31 NY3d 1045, 1047 [2018] [noting that courts must approve agency action that is supported by substantial evidence in the record, even where there is substantial evidence on both sides of the issue]); rather, our role is to examine and interpret the constitutional and statutory language, and to determine for ourselves whether the legislative enactment violates the explicit constitutional provision at issue (see Dalton v Pataki, 5 NY3d at 264-265).[FN1] We do not rule on the wisdom of the Legislature's enactment of laws, but on whether the NY Constitution prohibited the Legislature from enacting such laws.
In the law being challenged, the Legislature declared that IFS contests do not constitute gambling (see Racing, Pari-Mutuel Wagering and Breeding Law § 1400 [2]). Because "[p]ublic policy continues to disfavor gambling," exceptions to the constitutional prohibition on gambling must be strictly construed to ensure that they do not consume the rule itself (Ramesar v State of New York, 224 AD2d 757, 759 [1996], lv denied 88 NY2d 811 [1996]; see Molina v Games Mgt. Servs., 58 NY2d 523, 529 [1983]). As Supreme Court aptly observed, allowing the Legislature unfettered discretion to determine what is not gambling would render meaningless the constitutional prohibition on "lottery or the sale of lottery tickets, pool-selling, book-making, or any other kind of gambling" (NY Const, art I, § 9 [1]) because this area would devolve to being governed by statutory law and not by the constitutional provision (see generally Dalton v Pataki, 11 AD3d 62, 90 [2004] [holding that the general definition of lotteries advanced by the defendants, which was consistent with all gambling, "would expand the constitutional exception permitting state-run lotteries to such an extent that it would swallow the general constitutional prohibition on gambling"], mod 5 NY3d 243 [2005], certs denied 546 US 1032 [2005]). Thus, IFS contests are not excluded from the constitutional meaning of "gambling" merely because the Legislature now says that it is so.
NY Constitution, article I, § 9 (1) provides that, aside from certain enumerated exceptions, "no lottery or the sale of lottery tickets, pool-selling, book-making, or any other kind of gambling . . . shall hereafter be authorized or allowed within this state; and the [L]egislature shall pass appropriate laws to prevent offenses against any of the provisions of this section."[FN2] The NY Constitution does not define the word "gambling." In 1965, many years before the rise in popularity of IFS, the Legislature defined "gambling" in the Penal Law (Penal Law § 225.00 [2]). According to that definition,
"[a] person engages in gambling when he [or she] stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under his [or her] control or influence, upon an agreement or understanding that he [or she] will receive something of value in the event of a certain outcome" (Penal Law § 225.00 [2]).
"'Contest of chance' means any contest, game, gaming scheme or gaming device in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein" (Penal Law § 225.00 [1]).
Although, at earlier points in this litigation, defendants conceded that these Penal Law definitions are appropriate to apply in interpreting the constitutional provision at issue here, defendants now contend that the statutory definition is broader than required under the NY Constitution. They assert that we should instead use the standard applied by the Court of Appeals in People ex rel. Ellison v Lavin (179 NY 164, 170-171 [1904]), namely, that "[t]he test of the character of the game is not whether it contains an element of chance or an element of skill, but which is the dominating element that determines the result of the game." Contrary to defendants' argument, the Court of Appeals did not propound this as the, or even a, standard for determining whether something constituted gambling under the NY Constitution, as Ellison involved the interpretation of the statutory definition of "lottery" under the then-applicable Penal Law (id. at 168). Thus,
"[t]he current definition of 'contest of chance,' does not require that the element of chance be the 'dominating element.' Rather, it is a 'contest of chance' when, notwithstanding that the skill of the contestants may be a factor in the outcome, the outcome depends in a 'material degree' upon an element of chance" (William D. Donnino, Practice Commentaries, McKinney's Cons Laws of NY, Penal Law § 225.00; see 1984 Ops Atty Gen No. 84-F1 at 8 [noting that "(a)n attentive reading of the 1965 Penal Law shows that the Legislature rejected (the Ellison) test in crafting" new Penal Law definitions]).
We find that the current Penal Law definition comports with the common understanding of the meaning of the constitutional prohibition and of the particular words "book-making" and "gambling" — at both the time of the prohibition's enactment and now. Therefore, we accept the Legislature's own definition of gambling, as included in the Penal Law since 1965, as the appropriate definition for courts to apply when interpreting that word in the pertinent constitutional provision (see Dalton v Pataki, 5 NY3d at 264 [seeking to determine the meaning of a term that is undefined in NY Constitution, article I, § 9 by looking first to the Penal Law definition of that term]; see also Matter of Plato's Cave Corp. v State Liq. Auth., 115 AD2d 426, 428 [1985] [applying Penal Law § 225.00 definitions relating to gambling offenses to provisions of the Alcoholic Beverage Control Law, which does not contain definitions of related terms], affd 68 NY2d 791 [1986]). It is undisputed that IFS contestants pay an entry fee (something of value) in hopes of receiving a prize (also something of value) for performing well in an IFS contest. Therefore, such contests constitute gambling if their outcomes depend to "a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein," such that they are contests of chance (Penal Law § 225.00 [1]), or if they depend on a "future contingent event not under [the contestants'] control or influence" (Penal Law § 225.00 [2]).
According to the statement of agreed-upon facts that was submitted by the parties regarding how IFS contests operate, online IFS providers offer their subscribers season-long, weekly, and daily online IFS contests. Participants in such contests select fantasy teams of real-world athletes and compete against other contestants based on a scoring system that awards points based on the performances of the selected individual athletes in actual sporting events that are held after the IFS contest is closed and no more participants may enter the contest. Participants in IFS contests may use, among other things, their sports knowledge and statistical expertise to determine how athletes individually, and their fantasy teams overall, are likely to perform in such sporting events. Participants cannot control how the athletes on their fantasy sports teams will perform in such sporting events, and the winnings paid to successful online IFS contestants come from the entry fees paid by all contestants.
For purposes of this discussion, we accept the information considered by the Legislature indicating that IFS contests are contests requiring skill. For example, research demonstrated that lineups chosen by actual contestants beat those chosen at random and contestants improve their performance over time. Additionally, a very small percentage of IFS contestants receive a very large percentage of the prize money, suggesting that the skills exercised by this small percentage of winners actually affects the outcome of these contests. Nevertheless, skill and chance are not mutually exclusive; they often coexist.[FN3] The determinative question is whether IFS contests involve a material degree of chance. According to the statement of agreed-upon facts, although participants in IFS contests may use their skill in selecting teams, they cannot control how the athletes on their IFS teams will perform in the real-world sporting events. For example, those performances could be affected by such disparate circumstances as, among other things, player injury or illness, unexpected weather conditions, poor officiating, a selected player having a particularly bad day or an unselected player having a surprisingly good day. In other words, the skill level of an IFS contestant cannot eliminate or outweigh the material [FN4] role of chance in IFS contests. Thus, we agree with Supreme Court's interpretation and finding that plaintiffs met their burden to demonstrate beyond a reasonable doubt that Racing, Pari-Mutuel Wagering and Breeding Law article 14, to the extent that it authorizes or regulates IFS (see Racing, Pari-Mutuel Wagering and Breeding Law §§ 104 [23]; 1400 [1], [3]; 1402-1411), is unconstitutional because it violates the prohibition against gambling in NY Constitution, article I, § 9.
However, we preserve Racing, Pari-Mutuel Wagering and Breeding Law § 1412, which states that "[t]he conduct of unregistered [IFS] contests is prohibited." Because, due to our invalidation of most of Racing, Pari-Mutuel Wagering and Breeding Law article 14, no IFS contests can now be registered, section 1412 is consistent with the NY Constitution's prohibition on gambling inasmuch as the statute prohibits IFS contests.
Now that we have upheld Supreme Court's invalidation of the majority of Racing, Pari-Mutuel Wagering and Breeding Law article 14, we must determine whether the court properly upheld the portion of that article that excludes IFS contests from the scope of the definition of gambling in Penal Law § 225.00 (see Racing, Pari-Mutuel Wagering and Breeding Law § 1400 [2]). More specifically, we must determine whether the decriminalization provision violates the NY Constitution and, if not, is it possible or proper to salvage that provision or must the entirety of article 14 be invalidated.
As quoted earlier, the relevant part of NY Constitution, article I, § 9 states that "no lottery or the sale of lottery tickets, pool-selling, book-making, or any other kind of gambling . . . shall hereafter be authorized or allowed within this state; and the [L]egislature shall pass appropriate laws to prevent offenses against any of the provisions of this section" (NY Const, art I, § 9 [1]). This provision "was not intended to be self-executing . . . as it expressly delegates to the [L]egislature the authority, and requires it[,] to enact such laws as it shall deem appropriate to carry it into execution" (People ex rel. Sturgis v Fallon, 152 NY 1, 11 [1897]). For example, the Court of Appeals upheld the Legislature's decriminalization of wagering at licensed horse tracks (which, at that time, was not yet permitted under an exception to NY Constitution, article I, § 9), noting that
"[t]he authority to prescribe the punishment for the offenses mentioned in that provision of the Constitution is expressly conferred upon the [L]egislature, which necessarily included a delegation to it of the power and authority to increase or decrease the punishment for offenses of that character to such an extent as the [L]egislature deemed proper" (id. at 10).
An activity can be prohibited without being criminalized (see e.g. id. [discussing a statute that prohibited certain wagering and provided that the sole penalty would be a civil forfeiture of the sum wagered]; Penal Law § 221.10, as amended by L 2019, ch 131, § 2 [prohibiting unlawful possession of more than one ounce of marihuana as a violation, not a crime]). As NY Constitution, article I, § 9 grants the Legislature the authority to pass laws that it deems appropriate to further the purposes of that constitutional provision, including laws that decrease penalties previously imposed, courts may not substitute their own judgment of what they deem "appropriate or sufficient to prevent such [gambling] offenses" (People ex rel. Sturgis v Fallon, 152 NY at 10). Thus, the Legislature's enactment of the provision of Racing, Pari-Mutuel Wagering and Breeding Law article 14 removing IFS from the Penal Law definition of gambling did not, by itself, violate the NY Constitution.
As to whether a portion of Racing, Pari-Mutuel Wagering and Breeding Law article 14 can be severed,
"[t]he answer depends on whether the [L]egislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded, or rejected altogether. If removing particular provisions while leaving the remainder intact would result in a law the Legislature would not have intended, the entire statute must be stricken" (Matter of Hynes v Tomei, 92 NY2d 613, 627 [1998] [internal quotation marks and citations omitted], cert denied 527 US 1015 [1999]; see People v On Sight Mobile Opticians, 24 NY3d 1107, 1109 [2014]; CWM Chem. Servs., L.L.C. v Roth, 6 NY3d 410, 423 [2006]).
Supreme Court upheld the part of article 14 that provides that, "[b]ased on the findings in [Racing, Pari-Mutuel Wagering and Breeding Law § 1400 (1)]" — including that IFS contests are not games of chance — "the [L]egislature declares that [IFS contests do] not constitute gambling in New York state as defined in [Penal Law article 225]" (Racing, Pari-Mutuel Wagering and Breeding Law § 1400 [2]). We recognize that the Legislature was sympathetic to and supportive of IFS participants (see e.g. Racing, Pari-Mutuel Wagering and Breeding Law § 1400 [3]). Nevertheless, we have rejected the Legislature's explicitly stated basis for the removal of IFS from the Penal Law definition of gambling (see Racing, Pari-Mutuel Wagering and Breeding Law § 1400 [1]). Moreover, as part of the same legislation that decriminalized IFS, the Legislature clearly intended that IFS contests be heavily regulated (see Racing, Pari-Mutuel Wagering and Breeding Law §§ 1400 [3]; 1402-1406). Hence, we conclude that the Legislature, if it had envisioned the possibility that courts would invalidate the majority of article 14, would not have wished to preserve the decriminalization of IFS located in Racing, Pari-Mutuel Wagering and Breeding Law § 1400 (2). Thus, we refuse to sever that provision, and invalidate it as well.
Garry, P.J., Clark and Reynolds Fitzgerald, JJ., concur.
Pritzker, J. (dissenting).
Because it is my opinion that the amendment to the Racing, Pari-Mutuel Wagering and Breeding Law relating to interactive fantasy sports (hereinafter IFS) contests (see Racing, Pari-Mutuel Wagering and Breeding Law art 14, as added by L 2016, ch 237) was constitutionally enacted, I respectfully dissent. To begin, one cannot disagree that our judicial inquiry is limited to deciding whether the Legislature rationally determined, after hearing and considering evidence, that IFS contests are not "gambling" as defined under Penal Law § 225.00 (see Lincoln Bldg. Assoc. v Barr, 1 NY2d 413, 417-418 [1956], appeal dismissed 355 US 12 [1957]). Bearing in mind that our inquiry is narrow, it is my opinion that Racing, Pari-Mutuel Wagering and Breeding Law article 14 was constitutionally enacted because the legislative record supports that the outcome in an IFS contest neither depends upon (1) a "material degree upon an element of chance" nor (2) "a future contingent event not under [the contestants'] control or influence" (Penal Law § 225.00 [1], [2]). As such, the lawmakers properly determined that an IFS contest is not a constitutionally prohibited gambling activity and our decidedly non de novo inquiry ends (see Lincoln Bldg. Assoc. v Barr, 1 NY2d at 417-418).[FN5] Although this ultimate finding is certainly debatable — and was debated by the Legislature — absent irrationality, whether we would vote "no" on the floor of the Legislature is unrelated to our circumscribed judicial function and review of this particular law,[FN6] which neither encroaches upon a fundamental right nor affects a protected class (see e.g. Lincoln Bldg. Assoc. v Barr, 1 NY2d at 415; compare Randall v Sorrell, 548 US 230, 241 [2006]; Califano v Westcott, 443 US 76, 78 [1979]; Hernandez v State of New York, 173 AD3d 105, 114 [2019]). Similarly, plaintiffs' differing opinions as to the core issues, even if, as judges, we were to agree with them, cannot crest the steep summit required to declare the legislation facially unconstitutional. Simply stated, our inquiry rests solely on whether the Legislature rationally found that IFS contests are not gambling when enacting Racing, Pari-Mutuel Wagering and Breeding Law article 14.
In this vein, there is no dispute that legislative enactments enjoy a strong presumption of constitutionality (see Cohen v State of New York, 94 NY2d 1, 8 [1999]; Schulz v State of N.Y. Exec., 138 AD3d 1197, 1200-1201 [2016], appeal dismissed 27 NY3d 1123 [2016]), and opponents must surmount the heavy burden to establish the statute's unconstitutionality "beyond a reasonable doubt" (Matter of Moran Towing Corp. v Urbach, 99 NY2d 443, 448 [2003] [internal quotation marks omitted]). Plaintiffs, in mounting a facial constitutional challenge, "bear the burden to demonstrate that[,] 'in any degree and in every conceivable application,' the law suffers wholesale constitutional impairment" (Cohen v State of New York, 94 NY2d at 8, quoting McGowan v Burstein, 71 NY2d 729, 733 [1988]). Facial challenges to statutes are disfavored (see Washington State Grange v Washington State Republican Party, 552 US 442, 450 [2008]; People v Stuart, 100 NY2d 412, 422 [2003]), and, where the Legislature engaged in "line-drawing" within gray areas (FCC v Beach Communications, Inc., 508 US 307, 315 [1993]), such as comparing the elements of chance and skill involved in the outcome of an IFS contest, "restraints on judicial review have added force" (id.).
While the presumption of constitutionality is not irrebuttable (see Defiance Milk Prods. Co. v Du Mond, 309 NY 537, 541 [1956]), and "courts may scrutinize the basis of legislative enactments predicated upon the existence of a particular state of facts" (Lincoln Bldg. Assoc. v Barr, 1 NY2d at 415; see Defiance Milk Prods. Co. v Du Mond, 309 NY at 541), "[w]here[, as here,] the question of what the facts establish is a fairly-debatable one, we accept and carry into effect the opinion of the Legislature" (Old Dearborn Distributing Co. v Seagram-Distillers Corp., 299 US 183, 196 [1936]; Matter of Stubbe v Adamson, 220 NY 459, 469 [1917]). As such, courts may not substitute their judgment for that of the Legislature so long as there is "any state of facts either known or which could reasonably be assumed" that support the legislative decision to act (United States v Carolene Products Co., 304 US 144, 154 [1938]; see East New York Sav. Bank v Hahn, 326 US 230, 234 [1945]; South Carolina Highway Dept. v Barnwell Brothers, Inc., 303 US 177, 191 [1938]). Of course, we are the ultimate arbiters of constitutionality (United States v Morrison, 529 US 598, 614 [2000]; Campaign for Fiscal Equity, Inc. v State of New York, 8 NY3d 14, 28 [2006]), and, as such, Racing, Pari-Mutuel Wagering and Breeding Law article 14 is not immune from judicial scrutiny. Thus, I agree with the majority that "IFS contests are not excluded from the constitutional meaning of 'gambling' merely because the Legislature now says that it is so" (majority op at 5). However, here, no such political ipse dixit was afoot, as the record demonstrates with vigor that the lawmakers, without caprice, acted rationally, carefully and with measured consideration.[FN7]
Before exploring the record, one must be mindful of the respective burdens that the parties carry on these cross motions. It is my opinion that plaintiffs failed to meet their prima facie burden of establishing that Racing, Pari-Mutuel Wagering and Breeding Law article 14 was facially unconstitutional beyond a reasonable doubt. Their submissions were almost entirely dehors the legislative record and consisted of, among other things, (1) affidavits from plaintiffs Jennifer White and Charlotte Wellins wherein they detail the sad impact that gambling has had on their lives,[FN8] (2) a copy of the Laws of 1895 (ch 572), amending former Penal Law § 351, (3) copies of a settlement agreement entered into by the Office of the Attorney General of the State of New York and FanDuel, Inc., (4) a copy of a New York Times crossword puzzle and solution thereto and (5) the 2016 annual report of the New York Gaming Commission.[FN9] The opinions contained therein are both interesting and heartfelt, but they are nothing more than that, opinions. While raising legitimate legal questions and important social concerns, they do little more than establish that the Legislature, in finding that IFS contests are not gambling, reached different conclusions, which is a woefully inadequate foundation to meet their burden of establishing beyond a reasonable doubt that Racing, Pari-Mutuel Wagering and Breeding Law article 14 is facially unconstitutional.[FN10]
In my view, the opinions offered by plaintiffs, while challenging the basis of the Legislature's findings, were insufficient to shift the burden to defendants to prove the constitutionality of Racing, Pari-Mutuel Wagering and Breeding Law article 14. Further, even if the burden was somehow shifted, to defeat summary judgment, it would not be defendants' burden to disprove plaintiffs' opinions, but rather to offer a rational contrary opinion based upon the Legislature's review of the information before it (see generally Lincoln Bldg. Assoc. v Barr, 1 NY2d at 419-420). Here, the Legislature's judgment necessarily involved determining whether an IFS contest is a "game of chance" and, as such, analyzing whether the degree of chance is "material" in determining the outcome of an IFS contest. Because it is not seriously disputed that an IFS contest involves a high degree of skill, as was found by Supreme Court, then determining whether the degree of chance inherent in an IFS contest is "material" presented a difficult and nuanced question for the Legislature.[FN11] And, although it may have been rational to determine that the amount of chance in an IFS contest is material, as did some of the legislators who voted against the bill, it was not at all unreasonable, based upon the legislative record, to conclude otherwise. The difference is that the legislation bears the imprimatur and presumption of constitutionality and, thus, summary judgment should not have been granted in favor of plaintiffs.
As to defendants' cross motion for summary judgment, which Supreme Court partially denied, we turn first to the legislative record. On December 8, 2015, the Assembly Standing Committee on Racing and Wagering and the Consumer Affairs and Protection Legislative Commission duly noticed and held a lengthy public hearing regarding IFS in which 11 witnesses testified and were subject to questions from the floor. The lawmakers heard from IFS advocates, as well as those who were opposed to the legislation. In addition, the Senate, Assembly and respondent Governor received many written submissions relevant to the issues at hand, including support from professional sports teams, which are traditionally opposed to sports betting. Notably, the Legislature considered, debated and made detailed findings on the salient issues raised by plaintiffs. Indeed, the Legislature considered a broad range of evidence concerning the critical issue of the amount of skill and chance that is involved in influencing the outcome of IFS contests. The record reveals that different lawmakers reached different conclusions as to this very issue. In fact, some legislators analogized IFS to day trading, while others believed the activity was more akin to sports betting. These competing opinions were the function of the rational consideration of opposing views, resulting in the legitimate findings of fact that formed the cornerstone of Racing, Pari-Mutuel Wagering and Breeding Law article 14.
Although there was a great deal of evidence as to the predominance of skill inherent in an IFS contest, notably, there was also evidence, both written and oral, that "[c]hance is overwhelmingly immaterial in the probability of winning . . . fantasy games."[FN12] In addition, in distinguishing between systemic chance random-type games and IFS, one witness testified that
"fantasy sports are played by considering a number of interlocking and often shifting factors through strategic risk taking and decision making [which] help predict an abnormally diverse set of future events. This difference — the lack of systemic chance [—] is why [IFS contests] are not gambling and why chance is not a material element in the outcome of [IFS] contests."
An Assembly Member directly raised the issue of materiality with another IFS advocate, who stated that "the degree of chance comes nowhere close to material for daily fantasy sports." Although the Legislature was free to disregard this evidence, our own inquiry is more circumspect; we must ask ourselves this question — whether, after due consideration, was the conclusion drawn by the vast majority of legislators rational? In my opinion it was and, as such, the Legislature could, and did, reasonably determine that the outcome of an IFS contest does not depend, to a material degree, on chance, and the activity is not gambling under that category.
Similarly, the legislative record amply supports the finding that IFS contests are not games of chance under Penal Law § 225.00 (2) because, although the participants do pay an entry fee, success is not tethered to "a future contingent event not under [the participants'] control or influence" (emphasis added). Here, Supreme Court incorrectly focused on the fact that the participants do not have actual influence over the athletes. However, this notion was debated by the Legislature and it ultimately concluded that the proper focus is not on the participants' influence over the real world events and a specific athlete's performance, but the participants' unquestionable influence on winning the contest by making skillful choices in assembling a fantasy roster. Indeed, the plethora of evidence that was rationally relied upon by the Legislature in finding that IFS contests are predominantly contests of skill — a finding that Supreme Court accepted — also supports the notion that IFS contestants meaningfully, using certain parameters such as data and salary cap management, influence the outcome of the contests. Further, the Legislature reasonably found that IFS contest participants are active players in a separate competition that is clearly unconnected to any one single sporting event and, as such, rationally distinguished IFS contests from sports gambling. Indeed, the companies hosting these IFS contests neither offer single event competitions nor rosters that mirror actual teams. Therefore, the Legislature rationally found that there is a clear "difference between paying fees to participate in fantasy leagues and single-game wagering" (i.e., sports betting) (National Collegiate Athletic Ass'n v Governor of New Jersey, 730 F3d 208, 223 n 4 [3d Cir. 2013]). Thus, it was rational to find that IFS contests are not based upon the outcome of a "future contingent event not under [the participant's] control or influence" (Penal Law § 225.00 [2]).
In conclusion, because I find that the Legislature acted rationally based upon the evidence before it, it is my opinion that Racing, Pari-Mutuel Wagering and Breeding Law article 14 is constitutional on its face and, therefore, Supreme Court erred in partially granting plaintiffs' motion for summary judgment. Rather, it should have granted defendants' cross motion for summary judgement dismissing the complaint, rendering academic defendants' remaining arguments.
ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as upheld Racing, Pari-Mutuel Wagering and Breeding Law § 1400 (2); it is declared that (1) Racing, Pari-Mutuel Wagering and Breeding Law § 1400 (2) is void, and (2) Racing, Pari-Mutuel Wagering and Breeding Law § 1412 does not violate NY Constitution, article I, § 9; and, as so modified, affirmed.



Footnotes

Footnote 1: Contrary to the dissent's assertion, we do not contend that Dalton "expanded our standard of review" (dissenting op at 13). Since long before that case, more than one standard of review has existed, and courts must select the proper one depending on the type of constitutional question involved (see e.g. Campaign for Fiscal Equity, Inc. v State of New York, 86 NY2d 307, 314 [1995] [noting application of different tests to equal protection challenges and a claim that legislation violated the NY Constitution's Education Article]; Board of Educ., Levittown Union Free School Dist. v Nyquist, 57 NY2d 27, 43-49[1982]). As noted above, in Dalton, the Court of Appeals applied different standards of review for equal protection challenges (Dalton v Pataki, 5 NY3d at 265-266) than it did for constitutional challenges requiring pure interpretation of the anti-gambling provision (id. at 263-265, 270-272).

Footnote 2: Exceptions to the constitutional prohibition on gambling that have been approved by the people and are now enshrined in that constitutional provision include state-run lotteries with the proceeds going to support education, pari-mutuel wagering on horse races as prescribed by the Legislature, games of chance conducted by religious or charitable organizations, and "casino gambling at no more than seven facilities as authorized and prescribed by the [L]egislature" (NY Const, art I, § 9 [1]).

Footnote 3: Indeed, the statutory definition of "contest of chance" acknowledges that skill may play a role in an activity that qualifies as gambling (see Penal Law § 225.00 [1]).

Footnote 4: The dissent cites evidence that was before the Legislature wherein certain witnesses opined that the degree of chance involved in IFS contests is not material. We, however, reject the notion that materiality can be quantitatively determined. In our view, the question of whether the element of chance is material is a qualitative determination.

Footnote 5: It is important to note that the Legislature found that IFS contests are not gambling and thus did not need to "exempt" them from the gambling prohibition contained in NY Constitution, article I, § 9. As such, the cases relied upon by the majority, which suggest that the challenged statute must be strictly construed, are inapposite, as they involve activities that are clearly gambling, such as the lottery, which were exempted by the Legislature (cf. Ramesar v State of New York, 224 AD2d 757, 759 [1996], lv denied 88 NY2d 811 [1996]; Molina v Games Mgt. Servs., 58 NY2d 523, 529 [1983]; Dalton v Pataki, 11 AD3d 62, 80 [2004], mod 5 NY3d 243 [2005], certs denied 546 US 1032 [2005]). Further, the majority contends that Dalton v Pataki (5 NY3d 243 [2005], certs denied 546 US 1032 [2005]) expanded our standard of review, because the Court of Appeals "simply interpreted the language of NY Constitution, article I, § 9 against legislative enactments to determine for itself whether the statutes [at issue] violated [the] constitutional anti-gambling provision" (majority op at 4, citing Dalton v Pataki, 5 NY3d at 270-272). However, the cited portion of that decision is inapposite because there was specific documentary evidence, particularly a Mega Millions agreement and the Tax Law, which refuted the plaintiffs' claims of unconstitutionality (id. at 270-272). As such, there was no need for the Court to review the legislative record.

Footnote 6: Our judicial function and review is constitutionally mandated in part by the separation of powers (see generally Campaign for Fiscal Equity, Inc. v State of New York, 8 NY3d 14, 28 [2006]; Cohen v State of New York, 94 NY2d 1, 8 [1999]; Hussein v State of New York, 81 AD3d 132, 134 [2011], affd 19 NY3d 899 [2012]).

Footnote 7: In my view, the only ipse dixit that has been propounded is that of plaintiffs, who assert their own opinions as facts, but at the same time brand opposing opinions as fiction. This framing — conflating fact and opinion — is however needed to advance their notion that the enactment is facially unconstitutional.

Footnote 8: As social concerns are within the sole province of the Legislature (see Boreali v Axelrod, 71 NY2d 1, 13 [1987]), to the extent the affidavits are probative, neither references IFS.

Footnote 9: Contrary to the majority's characterization, I do not believe we are "limited to reviewing the legislative record" (majority op at 3), but it is undoubtedly a crucial part of our review.

Footnote 10: Plaintiffs' argument would have teeth if, for example, the Legislature found that roulette is not gambling — which is a patently unsupportable opinion given that the game is randomly determined by chance — or if the Penal Law required only "a" degree of chance.

Footnote 11: Materiality is an amorphous term and the difficulty in utilizing this ambiguous standard has been recognized in the commentary to Penal Law § 225.00, which states that "[t]he modernization of the definition of 'a contest of chance' has not, however, made it easier for courts to discern whether a game is a contest of chance" (William C. Donnino, Practice Commentary, McKinney's Cons Laws of NY, Book 39, Penal Law § 225.00 at 356 [2008 ed]).

Footnote 12: The speaker was quoting a study conducted by the former Chair of the Department of Statistics at Hebrew University, examining the win percentage of 28 of the most successful players in an IFS contest run by DraftKings, a company that hosts IFS contests.