Matter of City of Schenectady (2021 NY Slip Op 06120)





Matter of City of Schenectady


2021 NY Slip Op 06120


Decided on November 10, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:November 10, 2021

530906

[*1]In the Matter of the Foreclosure of Tax Liens by City of Schenectady. City of Schenectady, Appellant; Kenrick Permaul et al., Respondents, et al., Respondents.

Calendar Date:September 17, 2021

Before: Garry, P.J., Egan Jr., Lynch, Clark and Pritzker, JJ.


Bailey, Johnson & Peck, PC, Albany (Ryan P. Bailey of counsel), for appellant.
Mitchell S. Kessler, Cohoes, for Kenrick Permaul and others, respondents.
John R. Polster, Schenectady, for Mark Sokol, respondent.



Lynch, J.
Appeal from an order of the Supreme Court (Powers, J.), entered January 29, 2020 in Schenectady County, which, in a proceeding pursuant to RPTL article 11, among other things, partially denied petitioner's motion for summary judgment.
In December 2018, petitioner filed with the Schenectady County Clerk's office a verified list of parcels of real property with delinquent taxes for the 2017 tax year (see RPTL 1122). In April 2019, petitioner commenced this in rem tax foreclosure proceeding, pursuant to RPTL article 11, against the parcels remaining on the list and fixed the last day for redemption as July 5, 2019. With the petition and notice of foreclosure, petitioner issued all respondents a "Personal Notice of Commencement," which indicated that a respondent may be eligible for an extension of time, pursuant to a local homestead extension. Numerous properties were removed from the list after they were redeemed or for other reasons. Petitioner moved for default judgments against those properties that remained on the list and for which no answer was interposed. Petitioner separately moved for summary judgment against 32 parcels for which answers were interposed on the ground that no material issue of fact was raised by any of those answers.
Various parcel owners opposed the motion, with several asserting that they were entitled to the homestead extension. Respondent Khemchand Paul, who had not submitted an answer, moved to vacate Supreme Court's order granting petitioner a default judgment of foreclosure as to his parcel. On the return date of petitioner's summary judgment motion, Supreme Court held conferences with several parcel owners and reviewed papers submitted by others. At the conclusion of the conferences, Supreme Court issued a ruling from the bench, finding that petitioner had established a prima facie case against each respondent. However, the court also determined that "there appeared to be some indicia of merit to [some of] their contentions"; accordingly, the court authorized petitioner's submission of proposed orders granting summary judgment in its favor with the caveat that enforcement would be stayed against certain respondents for a period of 30, 45 or 60 days from entry to allow each such respondent the opportunity to "attempt to resolve their controversy with [petitioner]." Petitioner agreed to submit orders but, a few days later, moved to reargue, seeking vacatur of the stays of enforcement. In an order addressing petitioner's motion for summary judgment, the motion for reargument and other motions, Supreme Court, among other things, dismissed the action as against Paul, respondents Kenrick Permaul, Tracey Sykes, Andrew Wisoff, Congress Holding Corp. and Jason Sacks and ordered that further proceedings be scheduled as to respondents Elizabeth Ayers, Frank Popolizio, Mark Sokol and Gaston Hooks Jr., LLC. Petitioner appeals.
Wen Mei Lu-Whitney, administrator of the estate of Laurence Whitney, opposed petitioner's motion for summary judgment and argued that dismissal was required as to Congress Holding Corp. on the grounds that Whitney was the sole shareholder of that entity, petitioner had failed to substitute Whitney's estate as the named party for the affected parcels and a proceeding may not be maintained against a deceased individual. Although "a party may not commence a legal action or proceeding against a dead person, but must instead name the personal representative of the decedent's estate" (Matter of Foreclosure of Tax Liens, 165 AD3d 1112, 1116 [2018] [internal quotation marks, brackets and citation omitted], appeal dismissed and lv denied 35 NY3d 998 [2020]), petitioner did not commence this proceeding against Whitney — a person who had died in 2006 — but against a corporation. A corporation does not cease to exist or lose its corporate form upon the death of its sole shareholder; rather, ownership of the corporate shares transfers to the deceased shareholder's estate or otherwise passes as specified by that individual (see e.g. 89 Pine Hollow Rd. Realty Corp. v American Tax Fund, 96 AD3d 995, 996-997 [2012]).
Despite Lu-Whitney's assertions on appeal that Congress Holding Corp. was dissolved by the Secretary of State in 2009 and cannot own any property, in Supreme Court she never mentioned the corporate dissolution and affirmatively stated that Congress Holding Corp. still owned the parcels at issue. In any event, "[a] dissolved corporation retains the power to 'continue to function for the purpose of winding up [its] affairs'" and a corporation "continues to exist as a legal entity after dissolution for purposes of appearing in legal actions and proceedings," including the ability to be sued in connection with its debts (Harris v Stony Clove Lake Acres, 221 AD2d 833, 833 [1995], quoting Business Corporation Law § 1006 [a]; see Wells v Ronning, 269 AD2d 690, 692 [2000]; see also Business Corporation Law § 1005 [a] [2]). Thus, even if Congress Holding Corp. was dissolved, petitioner properly named it — the record owner — as the party responsible for taxes on the parcels.[FN1] As Lu-Whitney's opposition papers failed to raise a triable issue of fact, Supreme Court should have granted petitioner summary judgment against Congress Holding Corp.
Regarding Sacks and Ayers, the filing of a bankruptcy petition automatically stays "the commencement or continuation" of any action or proceeding (11 USC § 362 [a] [1]; see RPTL 1140 [1]; Levant v National Car Rental, Inc., 33 AD3d 367, 368 [2006]; Emigrant Sav. Bank v Rappaport, 20 AD3d 502, 503 [2005]). Although the stay is mandatory and takes effect immediately upon the filing of a bankruptcy petition, "the commencement of an action in violation of the automatic stay does not deprive the court of jurisdiction but merely suspends the proceedings during the pendency of the automatic stay" (Wells Fargo Bank, N.A. v Ranalli, 140 AD3d 1156, 1158 [2016]; see Emigrant Sav. Bank v Rappaport, 20 AD3d at 503; Carr v McGriff, 8 AD3d 420, 422 [2004]; Baker v Bloom, 146 AD2d 859, 859-860 [1989]; but see Storini v Hortiales, 16 AD3d 1110, 1111 [2005]). Supreme Court dismissed the petition against Sacks apparently based on an oral, off-the-record representation by his counsel that Sacks was a debtor in a bankruptcy proceeding. The record contains no proof of such a proceeding, nor when any bankruptcy petition was filed. Thus, it is unclear whether a bankruptcy stay prevented any steps taken against Sacks during this proceeding (see Baker v Bloom, 146 AD2d at 859-860; International Fid. Ins. Co. v European Am. Bank, 129 AD2d 679, 679-680 [1987]). As the court was not deprived of jurisdiction, it should not have dismissed the proceeding against Sacks. Instead, continuation of the proceeding should have been stayed against his property until the stay was or is lifted. Additionally, petitioner apparently became aware, after Supreme Court's order was entered, that Ayers has filed a bankruptcy petition, although it is unclear when that petition was filed. Therefore, we remit for an inquiry into the status of Sacks' and Ayers' bankruptcy proceedings and whatever effect they may have on this proceeding.[FN2]
Supreme Court properly granted Paul's motion to vacate the default judgment. Paul is the adult son of Paywantie Allicock (hereinafter decedent), who purchased the property at 82 James Street in the City of Schenectady, Schenectady County (hereinafter the property) in 2004 and resided there with her son until she passed away in May 2015. Paul continues to reside at the premises. At issue is whether petitioner duly acquired jurisdiction over the property for purposes of this RPTL article 11 in rem foreclosure proceeding, commenced in April 2019. Pertinent here, there is a split between the Second and Fourth Departments as to whether a tax foreclosure proceeding may include a parcel where the owner is deceased at the time the action is commenced (compare Matter of Foreclosure of Tax Liens, 165 AD3d at 1116, with Hetelekides v County of Ontario, 193 AD3d 1414, 1419-1420 [2021]). We ascribe to the viewpoint expressed by the Second Department that such a proceeding may not be commenced until such time as the petitioner first acquires jurisdiction over the personal representative of the decedent's estate (see Matter of Foreclosure of Tax Liens, 165 AD3d at 1116).
All taxes levied upon a parcel of real property become a lien on that property as of January 1 of the fiscal year for which the taxes have been levied (see RPTL 902, 1102 [4]). A municipality may enforce the payment of a delinquent tax so imposed through foreclosure on the tax lien (see RPTL 1102 [3]; 1104). RPTL article 11, the "Uniform Delinquent Tax Enforcement Act," is written to duly account for an owner's interests as a party in such a proceeding. The "List of Delinquent Taxes" that a tax district is required to file 10 months after the lien date must include a list of all parcels and the corresponding names of the owner of record (RPTL 1122 [3], [5], [6]). The petition, or an attachment, must include "the descriptions and names of the owners of the parcels" (RPTL 1123 [3]). A public notice of foreclosure must be published that includes a description of the parcels and the name of the owner(s) of record of each parcel as of the date the list of delinquent taxes was filed (see RPTL 1124 [3]). The "[p]arties entitled to notice" of commencement of the proceeding include each owner of record (RPTL 1125 [1] [a] [emphasis added]; see RPTL 1125 [1] [e]). Correspondingly, any person with an ownership or other interest of record may redeem the parcel or interpose an answer (see RPTL 1123 [6], [7]). When an answer has been interposed, "either party shall have an absolute right to a severance" (RPTL 1123 [7] [emphasis added]). Where an owner fails to redeem or submit an answer, "such person shall be in default" (RPTL 1123 [8]). The "Final Judgment" must determine the rights "of the several parties to the proceeding" (RPTL 1136 [1] [emphasis added]; see RPTL 1136 [2] [a]). This statutory structure protects the interests of an owner throughout, indicating that the proceeding is not just against the property and that jurisdiction must be obtained through proper service upon the owner of record.
Here, the List of Delinquent Taxes, filed on December 20, 2018 in the Schenectady County Clerk's Office, identified the owner of the property as "Allicock Paywantie." As explained in the Affidavit of Regularity of petitioner's assistant corporation counsel, petitioner utilized the services of a title company "to search title of all properties subject to the instant foreclosure." Such a search is in accord with petitioner's statutory obligation to notify "each owner and any other person whose right, title, or interest was a matter of public record as of the date the list of delinquent taxes was filed" (RPTL 1125 [1] [a] [i]). The "[p]ublic record" for these purposes includes the books maintained by the County Clerk as well as the records of Surrogate's Court (RPTL 1125 [1] [e]).
The record includes a copy of the last will and testament of decedent with a stamp indicating that the document had been filed in the Schenectady County Surrogate's Court on July 16, 2016. Although it is unclear whether any other documents were filed with Surrogate's Court, the distinct point of note is that, after a title search was completed, petitioner mailed separate notices of the proceeding to (1) Paul and the "Heirs at law of the estate of Paywantie Allicock" addressed to the property and (2) decedent's nephew at an address in Queens County. The nephew is named as the executor of the estate in decedent's will. The will also directed that the property be sold, with the net proceeds payable to the nephew, with the "hope" that he would use the funds for the benefit of Paul.
The foregoing indicates that petitioner was on notice that decedent had passed away before the proceeding was commenced. Between the filing of the list of delinquent taxes and commencement of this proceeding, petitioner revised its mailing list in an effort to notify the persons interested in decedent's estate. The flaw in this informal approach is that no one at that point had been duly appointed by Surrogate's Court to serve as the personal representative of the estate and, absent an appointment, lacked authority to represent the interests of the estate (see SCPA 1002; Matter of Foreclosure of Tax Liens, 165 AD3d at 1116). It follows, under these circumstances, that the proceeding was a nullity from its inception with respect to the property and Paul (see Matter of Foreclosure of Tax Liens, 165 AD3d at 1117). While we are mindful that Paul's motion to vacate the default judgment was not made within 30 days of entry of the judgment as generally required under RPTL 1131, and was approximately two weeks late, the fact remains that the proceeding was a nullity as a matter of law. For this reason, Supreme Court properly dismissed the proceeding against Paul.
Next, petitioner argues that Supreme Court erroneously determined that Permaul, Sykes and Wisoff are entitled to the homestead extension and, accordingly, erred in dismissing the petition against them. A tax district may increase the redemption period for residential property in the manner provided by RPTL 1111 (see RPTL 1110 [2]; 1111 [2]). Pursuant to RPTL 1111 (1) (b), "'[r]esidential property' means property which is improved by a one, two or three family structure used exclusively for residential purposes" and "[a] parcel shall be deemed to be residential property . . . if the applicable tax roll shows that (i) the assessor has assigned to the parcel a property classification code in the residential category, or (ii) the parcel has been included in the homestead class in an approved assessing unit, or in class one in a special assessing unit." "When determining whether a parcel qualifies as residential . . . property for the purposes of [RPTL article 11], the enforcing officer shall consider the information appearing on the applicable tax roll . . . [and] any relevant information submitted to him or her by the assessor, by the owner, or by any other person with an interest in a parcel" (RPTL 1111 [3]). "In lieu of submitting information to the enforcing officer as provided by [RPTL 1111], or in addition thereto, a respondent may raise the issue in an answer interposed pursuant to [RPTL article 11]. If the court determines that the parcel qualifies as residential . . . property and, as such, is not yet subject to foreclosure, the enforcing officer shall withdraw the parcel from foreclosure in the manner provided by [RPTL 1138]" (RPTL 1111 [4]). RPTL article 11 "appl[ies] to all counties, cities, towns and villages in this state, and shall supersede any inconsistent general, special or local law" (RPTL 1104 [1]).
Petitioner's local homestead extension provision states that "[t]he owners of one-family or two-family solely residential buildings, upon submission of proof that said properties were owner-occupied for the entire time of the tax delinquency, shall not be foreclosed until the expiration of 33 months from the date [petitioner] levied the tax liens thereon" (Charter of the City of Schenectady, art VI, § C6-18). As relevant here, on the "Personal Notice of Commencement" sent to respondents with the petition and notice of foreclosure, petitioner stated that a respondent may be eligible for an extension of time if certain requirements were satisfied. As listed in that notice, the eligibility requirements include: (1) the liens were not older than 2017; (2) the applicant had not previously applied for the homestead extension; (3) the property had been the applicant's actual residence since the lien arose; (4) the property is a one- or two-family dwelling that is not used for any commercial purpose; and (5) the applicant could produce proof of residence. Respondents were directed to request and submit a "Homestead Extension Affidavit" if they believed that they qualified.
As permitted by RPTL 1111 (4), respondents were entitled to raise, in their respective answers, the issue of an extension on account of the property's status as residential. In their answers, Permaul and Sykes each denied that the taxes alleged in the petition were fully due and payable, and Wisoff expressly stated that he was entitled to an extended period of redemption based on the residential nature of his property. As the issue was adequately raised, Supreme Court was provided with the opportunity to determine whether Permaul's, Sykes' and Wisoff's respective parcels qualified as residential property for purposes of an extension to the redemption period (see RPTL 1111 [4]).
Supreme Court correctly held that petitioner improperly required applicants for an extension to submit an affidavit attesting to a parcel's eligibility and to prove that the parcel has no preexisting, cumulative lien(s), and that the applicant has not previously applied for an extension, as such requirements are not included in the text of the local homestead extension provision (see Charter of the City of Schenectady, art VI, § C6-18). Therefore, these additional criteria cannot be imposed on owners seeking a homestead extension.
We must now decide whether the phrase in the local extension provision — "upon submission of proof that said properties were owner-occupied for the entire time of the tax delinquency" — is inconsistent with RPTL article 11, rendering it superseded and unenforceable (see RPTL 1104 [1]; Consolidated Edison Co. of N.Y. v Town of Red Hook, 60 NY2d 99, 107 [1983]). Inconsistency may be found where a local law expressly conflicts with state law, or where it "impose[s] prerequisite additional restrictions on rights under [s]tate law, so as to inhibit the operation of the [s]tate's general laws" (Consolidated Edison Co. of N.Y. v Town of Red Hook, 60 NY2d at 108 [internal quotation marks and citation omitted]). RPTL 1104 (1) expressly preempts any inconsistent local law. In the state statute permitting local tax districts to increase the redemption period for residential property, the Legislature defined the term "[r]esidential property" (RPTL 1111 [1] [b]). That definition does not require that the parcel be owner-occupied at any time, let alone for the entire duration of the tax delinquency. State law also directs the enforcing officer to the applicable tax roll when determining whether a parcel qualifies as residential property for such extension, although he or she must also consider proof submitted by the assessor, owner or others (see RPTL 1111 [3]). Petitioner's local law is inconsistent with these requirements because it requires owner occupancy and requires — rather than simply allows — the owner to submit proof.
Having concluded that the local law conflicts with state law, we next determine whether we must invalidate the entire local law or if we can simply excise the offending phrase. "The answer depends on whether the [local legislative body], if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded, or rejected altogether. If removing particular provisions while leaving the remainder intact would result in a law the [municipality] would not have intended, the entire statute must be stricken" (Matter of Hynes v Tomei, 92 NY2d 613, 627 [1998] [internal quotation marks and citations omitted], cert denied 527 US 1015 [1999]; see People v Viviani, 36 NY3d 564, 583 [2021]). "This exercise requires first an examination of the statute and its legislative history to determine the legislative intent and what the purposes of the new law were, and second, an evaluation of the courses of action available to the court in light of that history to decide which measure would have been enacted if partial invalidity of the statute had been foreseen" (CWM Chem. Servs., L.L.C. v Roth, 6 NY3d 410, 423 [2006] [internal quotation marks and citation omitted]). "This principle is one of function rather than form, and the answer to the inquiry must be reached pragmatically, by the exercise of good sense and sound judgment, by considering how the statutory rule will function if the knife is laid to the branch instead of at the roots" (People v Viviani, 36 NY3d at 583 [internal quotation marks and citation omitted]).
To determine legislative intent, we need only look to the plain language of the introductory clauses of the Schenectady City Council's resolution enacting, among other changes to its tax assessment laws, the homestead extension provision (see City of Schenectady Local Law No. 2012-02). In the "Whereas" clauses to that resolution, the City Council noted that prior provisions of the Schenectady City Charter were inconsistent with state laws and regulations regarding tax foreclosure procedures and "the City desires to bring its Charter into conformance with the statutes, rules and regulations of the State of New York" (City of Schenectady Local Law No. 2012-02). Considering the stated intent to conform the City Charter to state law, as well as the intent — by enacting a homestead extension in the first place — to provide extensions of time for residential homeowners, we conclude that the City Council would have wished for the local law to be enforced despite the severance of the invalid phrase (see People v On Site Mobile Opticians, 24 NY3d 1107, 1110 [2014]; Waste Recovery Enters. v Town of Unadilla, 294 AD2d 766, 767-768 [2002], appeal dismissed 100 NY2d 614 [2003], lv denied 1 NY3d 507 [2004], cert denied 542 US 904 [2004]; compare White v Cuomo, 181 AD3d 76, 86 [2020]).
As so redacted, the homestead extension applies to owners of residential property as defined by RPTL 1111 (1) (b) and prevents foreclosure until 33 months after the tax liens are levied. Applying these criteria, Permaul, Sykes and Wisoff were entitled to the homestead extension, based on the residential classification code applied to their parcels in the tax rolls, as well as their affidavits. Thus, Supreme Court properly dismissed the petition against them, which would allow those respondents additional time to redeem their property, but without prejudice to petitioner refiling if the tax delinquency remained after the requisite time had expired (see RPTL 1138 [1] [f]; [4] [d]).
Finally, petitioner contends that Supreme Court exceeded its equity jurisdiction by severing from this proceeding the parcels owned by Popolizio, Sokol and Gaston Hooks Jr., LLC and ordering further proceedings thereon. Initially, we disagree with Sokol's argument that the appeal is premature against him because Supreme Court has not yet ruled on that portion of petitioner's summary judgment motion. In its decision and order addressing, among other things, petitioner's motion for summary judgment, the court severed the petition as to certain respondents to allow them "a fuller opportunity to be heard before the [c]ourt with regard to their defenses." We interpret that aspect of the order — which did not grant an immediate summary judgment of foreclosure but continued the matter for further proceedings — as a partial denial of petitioner's motion for summary judgment. Petitioner was aggrieved by that partial denial of its motion and may appeal from it (see CPLR 5701 [a]; Matter of Dolomite Prods. Co., Inc. v Town of Ballston, 151 AD3d 1328, 1331 [2017] [stating that "a party is aggrieved when the court denies, in whole or in part, such party's requested relief"]; see also Allen v General Elec. Co., 11 AD3d 993, 994 [2004]).
A presumption of validity attaches to the taxes assessed and the procedures undertaken by a tax district in an RPTL article 11 proceeding (see RPTL 1134). "A respondent alleging any jurisdictional defect or invalidity in the tax, or in the proceeding for the enforcement thereof, must particularly specify in his or her answer such jurisdictional defect or invalidity and must affirmatively establish such defense" (RPTL 1134; see Lin v County of Sullivan, 100 AD3d 1076, 1077 [2012]). When a property owner has interposed an answer in a tax foreclosure proceeding, "[i]f the court determines that the answer is not meritorious, the court shall make a final judgment awarding to such tax district the possession of the affected parcel or parcels" (RPTL 1136 [2] [a]; see Matter of County of Broome [Cekic], 162 AD3d 1348, 1349 [2018], lv dismissed 32 NY3d 1052 [2018]).
Popolizio, Sokol and Gaston Hooks Jr., LLC submitted answers and responded to petitioner's summary judgment motion; although only Sokol and Popolizio submitted written responses, it appears that a representative of Gaston Hooks Jr., LLC appeared in court on the motion date and participated in a conference. Supreme Court did not find that these answers lacked merit. Rather, the court concluded that their arguments required further consideration. Specifically, the court noted that under petitioner's practice in prior years, a property owner who interposed an answer in an RPTL article 11 proceeding triggered petitioner's acquiescence to a delay of enforcement for approximately one year, but petitioner had recently changed its policy to "a harsher stance" of strictly adhering to the redemption date and not affording property owners any additional time. Some of these respondents had taken advantage of petitioner's prior practice. They, and others who may have known of it, may have relied upon that practice and may not have been aware of the change. Although petitioner is permitted to change its policies, including to implement a strict adherence to redemption dates, we find no error by Supreme Court declining to grant petitioner summary judgment against these respondents.[FN3]
Clark and Pritzker, JJ., concur.
Garry, P.J. (concurring in part and dissenting in part).
We concur in the majority's well-reasoned decision addressing all respondents except respondent Khemchand Paul. This in rem proceeding was properly and validly commenced as to the parcel upon which Paul has been residing, and Supreme Court should not have dismissed the proceeding as to that parcel.
Supreme Court initially granted petitioner a default judgment against the subject parcel after no one answered on behalf of or redeemed that parcel (see RPTL 1123 [8]). In his motion to vacate the default judgment, Paul argued that he was not personally served with process and was never properly joined as a party even though he occupied the premises, which were owned by his deceased mother. The majority relies upon a holding from the Second Department in determining that a tax foreclosure proceeding must be dismissed against a parcel if the property owner is deceased, because a proceeding cannot be commenced against a dead person (see Matter of Foreclosure of Tax Liens, 165 AD3d 1112, 1116 [2018], appeal dismissed and lv denied 35 NY3d 998 [2020]). The Fourth Department has specifically held to the contrary (see Hetelekides v County of Ontario, 193 AD3d 1414, 1419-1420 [2021]). As the Fourth Department stated, tax foreclosure proceedings are in rem proceedings, and "a petition in a tax foreclosure proceeding relates only to the property and not any particular person" (id. at 1420, citing RPTL 1123 [2] [a]; see Matter of Foreclosure of Tax Liens, 165 AD3d at 1125, 1126-1127 [Scheinkman, P.J., dissenting]). "While an action or proceeding cannot be commenced against a dead person who, by necessity, is a named party to the action, a tax foreclosure proceeding is not commenced against any person; it is commenced against the property itself. The owners are not necessary 'parties' to the tax foreclosure proceeding; they are only '[p]arties entitled to notice' of the proceeding" (Hetelekides v County of Ontario, 193 AD3d at 1420 [internal citations omitted], quoting RPTL 1125 [1] [a]). This is the correct and proper statement of law.
As an in rem tax foreclosure proceeding is commenced against the property, rather than the owner or any other person, such a proceeding may be commenced against a parcel even if its owner is deceased (see RPTL 1120; Hetelekides v County of Ontario, 193 AD3d at 1420). Contrary to the majority's determination, the law does not impose upon a taxing authority the obligation of petitioning Surrogate's Court for the appointment of a personal representative of the estate of a deceased property owner before commencing a tax foreclosure proceeding against the parcel (see Matter of Foreclosure of Tax Liens, 165 AD3d at 1116; SCPA 1002).[FN4] Instead, a taxing authority, such as petitioner, is obliged to strictly adhere to the detailed statutory framework of RPTL article 11, and to broadly provide notice to any person as required thereunder. There is no additional affirmative obligation to provide aid and potential legal assistance to delinquent taxpayers.
Paul's mother died in 2015, but she remained the record owner of the property when this proceeding was commenced in 2019. Although Paul continued to live in the residence after her death, no one paid the taxes. Paul's submission on his motion included a copy of his mother's will that was stamped filed by the Schenectady County Surrogate's Court in 2016, but it does not appear that an estate proceeding was commenced. According to that will, the mother's nephew is named as executor, the parcel at issue in this proceeding was ordered to be sold and the proceeds were bequeathed to the nephew; Paul was bequeathed the remainder of her assets but was given no legal right or interest in the parcel.
Paul has averred that he did not know what to do with mail addressed to his deceased mother, indicating that he did receive notices and tax bills mailed to her. Although it is unclear how petitioner became aware that Paul's mother was deceased, the record reveals that petitioner mailed copies of the petition and notice of petition to the parcel's street address, by regular and certified mail, separately addressed to Paul and to the "Heirs at law" of his mother. Contrary to Paul's argument that he was not personally served with process, the return receipts in the record show that Paul signed for each of those certified mailings. Additionally, and of critical import, petitioner also mailed copies to the nephew, by both regular and certified mail. The mailing was "deemed received" by the nephew (RPTL 1125 [1] [b]). Although Paul lived in the residence, he has not indicated that he had any right, title or interest in the property that was a matter of public record. Petitioner complied with the statutes regarding notice and also provided Paul with personal notice of this proceeding. Moreover, petitioner took the extra step of posting a notice on the door of the residence on the parcel, thereby giving notice to any occupants, including Paul. This in rem proceeding was thus properly commenced and continued against the parcel (see Hetelekides v County of Ontario, 193 AD3d at 1419-1420; but see Matter of Foreclosure of Tax Liens, 165 AD3d at 1116).
This position may appear harsh in effect, but there is an underlying presumption that it is well and widely understood that property taxes are due at regular intervals. Here, there is no record explanation for why the nephew — the named executor and beneficiary of the proceeds from a sale of the parcel under Paul's mother's will — failed to take any measures, over the course of several years, to protect and preserve the interest he had been bequeathed and charged with safekeeping, even after being notified that his bequest could be forever lost in foreclosure. Nonetheless, the nephew's failure to accept and meet his fiduciary and moral obligation to Paul and his mother's estate did not create an affirmative duty upon the municipality. Put another way, the municipality is not required to take formal legal steps to ensure that owners or other interested persons act responsibly. When taxes remain unpaid for lengthy periods, the municipality is strictly charged with meeting the statutory mandates for providing notice to certain persons; this obligation was fully met here.
Reviewing the underlying statutes, it bears noting that the caption of an RPTL article 11 petition does not list any person's name; the petition must instead list the "parcels to which this proceeding applies" (RPTL 1123 [2] [a]). Another statute requires the taxing authority to provide notice of commencement of a tax foreclosure proceeding to "each owner and any other person whose right, title, or interest was a matter of public record as of the date the list of delinquent taxes was filed" (RPTL 1125 [1] [a] [i]). Any such person may redeem the parcel, thereby terminating the proceeding against that parcel (see RPTL 1110 [3]; 1122 [10]; 1123 [6]), or may interpose an answer, at which time that person is then considered a party (see RPTL 1123 [6], [7] [noting that "(w)henever an answer has been interposed as herein provided, either party" has certain rights]). A failure to exercise either of those options results in a default, which forever bars and forecloses that person "from all his or her right, title and interest in and to the parcels described in such petition" (RPTL 1123 [8]).
The statutes provide to any person with any right or interest in the property — not just an ownership interest — a right to notice of commencement of the proceeding, to answer or to redeem the parcel (see RPTL 1123 [6], [7]; 1125 [1] [a] [i]). Examples of persons who might hold a non-ownership interest in a parcel and may want to participate in an RPTL article 11 proceeding include mortgage holders, land contract vendees, judgment creditors with a lien on the property, tenants with a leasehold interest or "a tax district other than the one foreclosing" (RPTL 1123 [6]; see e.g. Matter of Dutchess County [Putnam County Natl. Bank of Carmel], 107 AD3d 989, 989 [2013], lv denied 22 NY3d 852 [2013]; Matter of County of Erie, 103 AD2d 636, 638 [1984]; Casaburi v Dow, 100 AD2d 693, 693 [1984]). By statute, whoever files an answer becomes a party to the proceeding (see RPTL 1123 [7]). Aside from the petitioning municipality, however, no one automatically becomes a party to a tax foreclosure proceeding upon its commencement. As a corollary to the rights to answer or redeem, if any person with a right or interest in the property fails to answer or redeem, that person loses any such right to or interest in the parcel (see RPTL 1123 [8]). Nevertheless, the majority deems the foreclosure proceeding a nullity if the owner is deceased — finding owners to be necessary parties — but not if any other person designated as a party entitled to notice is deceased.
The erroneous interpretation of the governing statutes by the majority and the Second Department poses significant and foreseeable difficulties both procedurally and as to the stability of title ownership. Under this holding, before being permitted to collect unpaid tax liens, cities and counties must first serve an untenable role as private investigators, burdened with tracking down obituaries, wills, heirs and potential estate representatives. If property owners are known to be deceased, the municipality's chief fiscal officer may find himself or herself serving as an unwilling serial filer of estate proceedings (see SCPA 1002 [1]), especially in larger municipalities. Worse, if no willing estate representative can be located, the chief fiscal officer — who is responsible for the collection of delinquent taxes in addition to being a statutorily permitted appointee as a public administrator of estates (see SCPA 1001 [8] [a]) — could be granted letters of administration upon a deceased owner's estate, and thus be saddled with the attendant fiduciary obligations (see Matter of Zaharia, 243 AD2d 926, 926-927 [1997]). Indeed, a chief fiscal officer is not permitted to renounce the right to serve as the administrator and, if appointed, may only be excused from fulfilling estate duties by court order upon motion (see SCPA 1103 [3]); Surrogate's Court may, however, deny such a motion (see Matter of Zaharia, 243 AD2d at 927).[FN5]
As to the stability of title ownership, in declaring that a tax foreclosure proceeding against a parcel with a deceased owner is "a nullity from its inception," the majority fails to acknowledge that the municipality and the court will not always be aware that an owner is deceased. Yet such awareness is irrelevant under this holding. At or before commencement, the foreclosing municipality must provide notice to any owner or person with an interest in the property that "was a matter of public record as of the date the list of delinquent taxes was filed" (RPTL 1125 [1] [a]), with the "[p]ublic record" for these purposes including the records of Surrogate's Court of the county in which the parcel is located (RPTL 1125 [1] [e]). A search of those records will not disclose anyone who dies after the list of delinquencies was filed but before commencement of the tax foreclosure proceeding. The search may fail to reveal a person who died resident in another county and whose estate is pending in that other county. Nor will it reveal any deceased person for whom no documents have been filed in any Surrogate's Court. What will then result, if the municipality conducts a proper search but fails to learn that an owner is deceased?
In this scenario, upon the ensuing default, statutory law provides that, upon the municipality obtaining a final judgment and deed to the parcel, "the tax district shall be seized of an estate in fee simple absolute in such parcel and all persons, including the state, infants, incompetents, absentees and non-residents who may have had any right, title, interest, claim, lien or equity of redemption in or upon such parcel shall be barred and forever foreclosed of all such right, title, interest, claim, lien or equity of redemption" (RPTL 1136 [3]). But will such a deed be deemed valid where the underlying proceeding was a nullity as to that parcel? And if the municipality, still unaware of the death, sells that parcel, can someone who had some interest in the parcel or in the estate of the decedent later attack any subsequent deed in that chain (see Matter of Byrnes v County of Saratoga, 251 AD2d 795, 798 [1998] [holding that, where notice was improper and failed to provide the court with jurisdiction, the tax sale was invalid, the municipality did not acquire legal title that it could convey and the prior owner was record owner of the parcel]; see also 13 Warren's Weed, New York Real Property § 134.05 [2] [noting that a tax deed from a municipality creates an absolute fee "subject to . . . cancellation for," among other things, "defects in the proceedings affecting the 'jurisdiction upon constitutional grounds'"])? As these scenarios illustrate, the majority holding here creates a potential cloud on title to such parcels which may embroil the municipality and others in title litigation for untold years in the future.[FN6] For these reasons, a straight-forward application of the law regarding in rem proceedings — as delineated herein and by the Fourth Department (see Hetelekides v County of Ontario, 193 AD3d at 1419-1420) — is not only the correct statutory interpretation, but would avoid these problems entirely.
Returning to the merits of Paul's application, a motion to vacate a default judgment of foreclosure "may not be brought later than one month after entry of the judgment" (RPTL 1131; see Matter of Foreclosure of Tax Liens, 171 AD3d 1175, 1176 [2019]; 3 Del. Group LLC v Broome County, 167 AD3d 1117, 1118 [2018]). Although Supreme Court "has equity jurisdiction in proceedings pursuant to RPTL article 11, the court may not disrupt petitioner's title to the property without authorization and in violation of the applicable statutory provisions" (Matter of County of Sullivan [Congregation Khal Chaside Skwera, Inc.], 86 AD3d 671, 672 [2011] [internal citations omitted]). Thus, courts have the "authority to reopen [a] default judgment only where the motion to do so is brought within one month after its entry" (id. at 673). Here, Paul moved on October 8, 2019 to vacate the default judgment of foreclosure entered on August 26, 2019. It is undisputed that Paul received notice but failed to redeem the parcel, submit an answer in the foreclosure proceeding or seek to reopen the default within the time period established by RPTL 1131. Thus, he was "forever . . . barred and foreclosed of all right, title, and interest and equity of redemption" in the property (RPTL 1131; see RPTL 1123 [8]; Matter of County of Sullivan [Congregation Khal Chaside Skwera, Inc.], 86 AD3d at 673). The court was precluded from invoking its broad equitable powers and was required to deny Paul's motion to vacate the default judgment (see Matter of City of Utica [Martin], 175 AD3d 1047, 1048 [2019]). Accordingly, the order should be further modified by denying Paul's motion to vacate the default judgment.
Egan Jr., J., concurs.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as dismissed the petition against respondents Congress Holding Corp. and Jason Sacks; petitioner's motion for summary judgment granted against respondent Congress Holding Corp. and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.



Footnotes

Footnote 1: In her brief, Lu-Whitney asserts that the corporation was dissolved for failure to make required reports to the tax commission (see Tax Law § 203-a). A corporation dissolved on that basis is subject to the requirements of Business Corporation Law § 1006 (see Tax Law § 203-a [10]; Business Corporation Law § 1009), which explicitly provides that title to assets of a dissolved corporation " shall remain in the corporation until transferred by it in its corporate name" (Business Corporation Law § 1006 [a] [1]). Lu-Whitney's submissions indicate that Whitney's estate proceedings are complex and still open. Nevertheless, as of the commencement of this proceeding, the corporate assets had not been transferred.

Footnote 2: If this proceeding is stayed due to bankruptcy proceedings, petitioner may apply to Bankruptcy Court to terminate or modify the stay (see Carr v McGriff, 8 AD3d at 422; In re Haynes, 283 BR 147, 156 [Bankr Ct, SD NY 2002]).

Footnote 3: We note that petitioner incorrectly interprets our decision in Matter of County of Broome (Cekic) (162 AD3d at 1349-1350) as precluding municipalities from accepting late tax payments after the redemption date. Indeed, petitioner's assertion is curious considering that, under its previous policy, petitioner regularly accepted late tax payments — with penalties and interest — after the redemption date, even until immediately before a deed was signed transferring the property to petitioner as a result of the tax foreclosure proceeding. Moreover, we have not discovered any law that precludes municipalities from settling pending RPTL article 11 proceedings by accepting late tax payments (see Anderson v Pease, 284 AD2d 871, 873-874 [2001]; Matter of Foreclosure of Tax Liens, 23 Misc 3d 1140[A], *2 [Sup Ct, Cortland County 2009] [noting that "(d)uring the period of time between the expiration of the statutory right to redeem and the conveyance of fee title to the tax district by deed from the enforcement officer, a tax district . . . may authorize an extension of the time to redeem"]).

Footnote 4: In contrast, if a person has interposed an answer — thereby becoming a party — and dies thereafter, the court may be required to substitute a proper party for the deceased party (see CPLR 1015 [a]; 1021).

Footnote 5: In a case where a county's chief fiscal officer sought to be relieved of his appointment as administrator of the estate of a deceased individual who owned 80 parcels with tax delinquencies, this Court found no inherent conflict of interest between the dual roles, noting that Surrogate's Court was "[m]indful of the outstanding tax liabilities attached to the parcels comprising the estate . . . [and] imposed a prohibition on the sale, foreclosure or encumbrance of such property as a condition of its order of appointment" (Matter of Zaharia, 243 AD2d at 927). Should that situation be repeated, a municipality, in attempting to secure an estate representative for a deceased owner for the purpose of commencing a tax foreclosure proceeding against a parcel, may unwittingly obtain an order that expressly prohibits such foreclosure.

Footnote 6: Although a tax deed is cloaked in a presumption of regularity that becomes conclusive two years after the deed is recorded, at which time no proceeding may be commenced to set aside such deed (see RPTL 1137), proceedings that are timely commenced may continue for an undetermined amount of time. Moreover, if the tax proceeding that resulted in the tax deed was a nullity, a court may conclude that such a statute of limitations is inapplicable (see Cameron Estates, Inc. v Deering, 308 NY 24, 30-31 [1954]; Minotti v Larkin, 9 AD3d 699, 701 [2004]).